### BRUNNER v. BOURNONVILLE et al.

(Supreme Court, Appellate Division, First Department. March 8, 1901.)

PARTNERSHIP—AGREEMENT BETWEEN PARTNERS — CONSIDERATION — SALE OF FIRM PROPERTY—PATENTS—JOINT OWNERSHIP.

> Defendant was the inventor of a gas generator. He contracted with C. to sell the patents to him, to be paid for in installments, with the stipulation that on default in any installment the ownership of the patents should revest in the defendant. After making two payments, C. refused to pay more. Defendant then formed a partnership with plaintiff and others for the manufacture of generators. Defendant, with the consent of the other partners, then notified C. that new patents had been granted, remedying the defects which impaired the former ones, and that he might continue his payments under the old agreement. The partners consented to this, with the understanding that whatever C. paid was to be the property of the firm. *Held* that, since the patents were the property of the firm, the consent of the other partners to relinquish their right thereunder was a sufficient consideration for the defendant's promise that the money received should go to the firm.

Appeal from special term, New York county.

Action by Balthazzar Brunner against Eugene Bournonville and others. From a judgment in favor of plaintiff, defendant Bournonville appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

John S. Seymour, for appellant.
Artemus B. Smith, for respondent Brunner.
David D. Ackerman, for respondent Goldbacher.

RUMSEY, J. The action was brought to procure a judgment dissolving a partnership between the parties, and for an accounting and other relief. It was tried at special term, and the court handed down a decision containing separate findings of fact and conclusions of law, and giving to the plaintiff substantially the relief he demanded. The question presented here turns almost exclusively upon the facts, and a careful examination of the testimony satisfies us that the findings of fact made by the learned justice at the special term are amply sustained by the evidence, and, indeed, that no other conclusion should have been reached by him. It appears that Bournonville had invented a machine for making acetylene gas, and had applied for patents to protect his invention. Pending his application he made a contract with one Charleson by which he agreed to sell the patents, when

granted to him, for the sum of $25,000, to be paid as was more particularly provided in the contract. The contract also made provision for royalties to be paid to Bournonville, not necessary to be considered here. It contained finally a provision that, if Charleson should default in any of the payments, the agreement should become of no effect as to any further performance of it, otherwise obligatory upon either of the parties; it being the intention of that part of the agreement that in case of such a default Bournonville should be invested with the exclusive ownership of the patents, except in certain respects, which it is not necessary to consider here. Charleson made the first two payments under his contract, and no question is made with respect to these payments. The patents were granted in September, 1898, and Bournonville made a claim upon Charleson for the further payment then due, which Charleson refused to pay, and Bournonville thereupon claimed that the contract between them was canceled because of his default in this payment. After that had been done, the parties to this action made the contract upon which this litigation has arisen. It provided, shortly, for the formation of a stock company, in which all the parties were to have shares, and the plaintiff, Brunner, and the defendant Brunner were to take stock to the amount of $5,000 apiece, which was to be used for the purposes of the corporation. The $5,000 was contributed by each of the two Brunners, and the business of manufacturing the machinery went on, although no corporation was formed. The learned justice below has found that the parties, by virtue of the agreement and their action under it, became co-partners under the style of the Bournonville Acetylene Generator Company. Upon the facts this conclusion of law cannot be denied. It appeared that after this company had been in existence for some time new patents were granted, and thereupon, at the suggestion of Bournonville, a notice was sent to Charleson that new patents had been granted, obviating the defects which he thought had impaired the former patents; and an opportunity was given him to make the payments upon his contract as he had agreed to do, and to re-establish his contract. It is said by the plaintiff and his witnesses that they consented to the giving of this notice to Charleson, and that in consideration of this assent it was agreed between them and Bournonville that whatever should be paid by Charleson on his contract should belong to the generator company, as a part of its assets. This was denied by Bournonville, but was found to be a fact by the court below, and that finding was warranted by the evidence. In the face of this finding of fact, it becomes unimportant to consider what were the precise rights of the parties in Charleson's contract when it was re-established under their contract of March 11, 1899, by which it was agreed to organize this company. It is sufficient to say that when the new patents were granted, so far as the parties to this action are concerned, it was understood that these patents belonged to them, and that Charleson's right to have them had been lost because of his failure to make the payments as required by the contract between him and Bournonville. Whether that was correct or not is not very material, because there is no doubt that the parties to this agreement contracted with that understanding of the situation, and, when

they agreed that Charleson might have an opportunity to re-establish his rights, it was done upon the express agreement that whatever he paid, if anything, should belong to the firm of which they were members, and which was then engaged in manufacturing the machinery under their contract. The consent of that firm to yield the rights which they insisted upon, and to permit Bournonville to re-establish the contract with Charleson, was a sufficient consideration for his agreement that all the money which should be paid by Charleson should go to the firm which claimed to be the owner of the patents. That being so, it is unnecessary to consider any other question in the case, because when Charleson, upon receiving that notice, saw fit, as he did, to re-establish his contract with Bournonville by making the further payments required by it, and Bournonville permitted that action and received that money, there can be no doubt that whatever Bournonville then received, or whatever he might thereafter become entitled to receive, by reason of the re-establishment of the contract with Charleson, belonged to the firm of which he was a member, pursuant to the agreement by which he had induced the other members to consent to the re-establishment of his contract with Charleson.

Therefore, without considering any of the other questions in this case, we conclude that the judgment below was correct, and must be affirmed, with costs. All concur.